UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW MEXICO

In re:

MARK HENRY DUBBIN and  No. 19-12040-t7
MARGARET LIN DUBBIN,

    Debtors.

PHILIP J. MONTOYA,
Chapter 7 Trustee,

    Plaintiff,

v.  Adv. No. 21-1004-t

MARGARET DUBBIN,
As trustee of the IDEALS, Inc.
401(k) Profit Sharing Plan

    Defendant.

## OPINION

The chapter 7 trustee sued the trustee of a pension plan to recover $50,000 Mrs. Dubbin paid to the plan shortly before she and her husband filed this chapter 7 case. The money repaid a loan from the pension plan to Mrs. Dubbin. Plaintiff's theories of recovery are that the payment is avoidable as a preferential and/or fraudulent transfer. Before the Court is Defendant's motion to dismiss the proceeding for failure to state a claim. Defendant makes two arguments in support of her motion. First, Defendant argues that when Mrs. Dubbin repaid the loan she did not owe a "debt" to the plan. Consequently, Defendant argues, there was no antecedent debt upon which to base an avoidable preference claim. Next, Defendant argues that both of Plaintiff's claims fail because there was no "transfer"—Mrs. Dubbin simply moved the money from one account to another.

Having read the pleadings and briefs, the Court concludes Plaintiff has stated a claim under both theories of recovery. Plaintiff has validly alleged that there was an antecedent debt when the payment was made, so his preference claim is viable. Likewise, he has validly alleged that defendant was the initial transferee of an avoidable transfer. The motion to dismiss therefore will be denied.

A. <u>Facts</u>.[1]

For the purpose of ruling on the motion, the following factual allegations from the complaint are accepted as true:

IDEALS, Inc. ("Ideals") is a New Mexico corporation. At all relevant times, Mrs. Dubbin was the president and 100% shareholder of Ideals.

Ideals maintained a 401(k) profit sharing plan. Mrs. Dubbin was the plan administrator, sole trustee, and a plan participant.[2]

On February 2, 2018, Mrs. Dubbin borrowed $50,000 from the plan. She signed a promissory note payable to the plan trustee, promising to repay the loan over 260 months,[3] with interest at "prime plus 2%."

In July 2019 Mr. and Mrs. Dubbin sold a skid-steer and a pickup truck for $34,300. Using this money and other funds, , Mrs. Dubbin paid Defendant $50,000 (the "Payment") on July 30, 2019, fully repaying the 401(k) loan.

---

[1] The Court takes judicial notice of its docket in this proceeding and the Debtors' main bankruptcy case, to consider the contents of the dockets but not the truth of the matters asserted therein. *Johnson v. Spencer*, 950 F.3d 680, 705 (10th Cir. 2020).

[2] There are no allegations in the complaint about how the plan holds, pools, or invests its funds; how many participants there are; what investment options are available to participants; and how the plan raises money when a participant asks for a loan.

[3] The repayment term does not comply with 26 U.S.C. § 72(p)(2)(B).

Debtors filed this chapter 7 case on August 30, 2019, whereupon Plaintiff was appointed the chapter 7 trustee. Debtors elected to use the New Mexico exemptions. They claimed Mrs. Dubbin's 401(k) account (which had a balance of $104,000) as exempt.

On February 8, 2021, Plaintiff brought this proceeding against Defendant in her capacity as the trustee of the Ideals 401(k) plan. Plaintiff asserts claims against Defendant to recover the Payment under §§ 547[4] (avoidance of a preferential transfer) and 548 (avoidance of a fraudulent transfer).

Plaintiff asserts, among other things, that the Payment paid an antecedent debt (the pension plan loan) in preference to other creditors. Plaintiff also asserts that the Payment converted non-exempt assets to exempt assets, with the intent to hinder, delay, or defraud creditors.

Defendant filed the motion to dismiss on March 16, 2021, arguing that there was neither an antecedent debt nor a transfer.

B.  Motion to Dismiss Standards.

> Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A complaint that does not satisfy this standard is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In considering a motion to dismiss, the Court considers whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*In re Byrnes*, 2021 WL 2787605, at *2 (Bankr. D.N.M.) (citations omitted).[5]

C.  Defined Contribution Pension Plans.

401(k) and other defined contribution retirement plans are heavily regulated by the federal government. The requirements include:

---

[4] All statutory references are to 11 U.S.C. unless otherwise indicated.
[5] The Federal Rules of Civil Procedure at issue here are made applicable to this proceeding by application of Federal Rules of Bankruptcy Procedure 7008 and 7012(b), respectively.

| Requirement | Statute or regulation |
|---|---|
| The plan must be created by a written instrument | 29 U.S.C. § 1102 |
| There must be a plan fiduciary | 29 U.S.C. § 1102 |
| All plan assets must be held in trust by one or more trustees | 29 U.S.C. § 1103 |
| Plan fiduciaries must not engage in any "prohibited transactions" | 29 U.S.C. § 1106 |
| Certain loans to plan participants are excepted from the definition of "prohibited transaction" | 29 U.S.C. § 1108 |
| The requirements for a loan to a participant include:<br>• Must be available to all participants;<br>• Highly compensated employees may not borrow more than others;<br>• Must be made in accordance with specific provisions about the loans set forth in the plan documents;<br>• Must bear a reasonable rate of interest; and<br>• Must be adequately secured;<br>• Must be the lesser of $50,000 or one-half of the pension plan account balance<br>• Must be repaid within 5 years;<br>• Must have level amortization | 29 U.S.C. § 1108(b)(1)(A);<br>29 U.S.C. § 1108(b)(1)(B);<br>29 U.S.C. § 1108(b)(1)(C);<br><br>29 U.S.C. § 1108(b)(1)(D);<br><br>29 U.S.C. § 1108(b)(1)(E)<br><br>26 U.S.C. § 72(p)(2)(A)<br><br>26 U.S.C. § 72(p)(2)(B)<br>26 U.S.C. § 72(p)(2)(A) |
| Tax attributes of plans and loans | 26 U.S.C. § 501(a) |
| If a plan participant borrows money from the plan and repays the loan, there are no adverse income tax consequences. | 26 U.S.C. § 72(p) |
| If the borrower defaults, however, then the loan is treated as taxable income in the year made, and a 10% penalty is also charged. | 26 U.S.C. § 72(p), (t) |

D.   The *Villarie* Case.

Defendant argues that it had no claim against Mrs. Dubbin when she made the Payment, so there was no "antecedent debt." Lacking an antecedent debt, Defendant argues, Plaintiff's preference action fails to state a claim.

There is substantial support for Defendant's position that pension plan loans are not debts under the Bankruptcy Code. The first significant case to reach that conclusion was *In re Villarie*, 648 F.2d 810 (2d Cir. 1981), which addressed a prepetition loan from the New York City Employees' Retirement System ("NYCERS") to a participant. After the loan was made the participant filed a chapter 7 case. NYCERS filed a motion with the bankruptcy court for a declaration that the loan was not a "debt" under the Code. The bankruptcy court held that it was a debt. This ruling was affirmed by the district court but reversed by the Second Circuit. The *Villarie* court first noted that under the Bankruptcy Act of 1898, advances from annuity funds or insurance policies were not "provable debts." 648 F.2d at 812. The court then stated that the Bankruptcy Code replaced "provable debt" with "debt" and "claim." *Id.*; Section 101(5)(A) and (12). The *Villarie* court held, however, that even under the new Code definitions, a loan from a pension plan did not create a debt:

> Notwithstanding s B3.28.0's multiple use of the word "shall" . . . this provision merely directs NYCERS to deduct additional sums from a member's paycheck. It does not give NYCERS the right to sue a member for the amount of the advance. Indeed, should a member retire or resign from the City's employ, NYCERS would merely offset the amount borrowed against his future benefits. In the language of 11 U.S.C. § 502(b), this "claim is unenforceable against the debtor" Therefore, it cannot give rise to a debt that can be discharged in bankruptcy.

648 F.2d at 812.

E.  Applying *Villarie* to chapter 13 cases.

*Villarie* has been followed by bankruptcy courts deciding how much "disposable income" chapter 13 debtors must devote to their plans. These courts have held that monthly payments to repay a pension plan loan should be considered part of a debtor's disposable income because the loan is not a debt. *See, e.g., In re Taylor*, 248 B.R. 37, 42 (S.D.N.Y. 2000), reversed on other grounds, 243 F.3d 124 (2d Cir. 2001); *In re Ng*, 2011 WL 5925527, at *4 (Bankr. D. Haw.); *In re*

*Esquivel*, 239 B.R. 146, 149-54 (Bankr. E.D. Mich. 1999); *In re Devine*, 1998 WL 386380, at *8 (Bankr. E.D. Pa.); *In re Fulton*, 211 B.R. 247, 263 (Bankr. S.D. Ohio 1997); *In re Delnero*, 191 B.R. 539, 544 (Bankr. N.D.N.Y. 1996); *In re Goewey*, 185 B.R. 444, 446-47 (Bankr. N.D.N.Y. 1995); *In re Scott*, 142 B.R. 126, 130 (Bankr. E.D. Va. 1992); *In re Jones*, 138 B.R. 536, 537-38 (Bankr. S.D. Ohio 1991).

F. The Supreme Court Casts Doubt on *Villarie's* Analysis.

*Villarie's* reasoning was undercut by the Supreme Court's decision in *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991), which held that nonrecourse secured obligations are "claims" against the debtor under the Bankruptcy Code. *See* § 102(2) ("'claim against the debtor' includes claim against property of the debtor"). Pension plan loans are a classic form of nonrecourse secured claim: the plan does not have personal recourse against the borrower but is fully secured by its right to set off the loan obligation against the account balance of the borrower. The *Villarie* court apparently overlooked § 102(2).

G. The *Buchferer* Case.

The *Villarie* decision was questioned by *In re Buchferer*, 216 B.R. 332 (Bankr. E.D.N.Y. 1997). In *Buchferer* Judge Stan Bernstein stated:

> *Villarie* held that a common form of debt outside of bankruptcy is not debt inside of bankruptcy. One should always be wary whenever a perplexing legal issue is disposed of by a definition that runs contrary to the usage of a common word in ordinary language and business practice.

216 B.R. at 336. The court went on:

> By definition, a 'debt' is simply 'liability on a claim' under section 101(12). That is the entire definition. The Code offers no further criteria for identifying a debt. Congress must have concluded that the meaning of 'debt' in ordinary linguistic usage is so well understood that the term does not require any further elaboration. More importantly, the draftsmen of the Code preferred to focus their attention on *defining the correlative and co-extensive term 'claim'* under section 101(5) and

stipulating a rule of construction for the fundamental term 'claim' under section 102(2).

Under section 101(5), a "claim means—(A) a right to payment ..." The Second Circuit has recently had the occasion to stress the broadness of the term 'claim' and that it is the correlative of the term 'debt.' See *Mazzeo v. U.S. and N.Y. State (In re Mazzeo),* 131 F.3d 295 (2d Cir.1997) (construing 'contingent' claim in determining the debt limits for a chapter 13 filing).

The definition of 'claim' says absolutely nothing about the **source** of payment to satisfy the claim. It is true that the definition of 'creditor' under section 101(10) adds to the term 'claim' the words "against the debtor." Without either more thoughtful analysis or consideration of the applicable Rule of Construction under section 102(2), a reader might draw a misleading and illogical inference that the definition of 'creditor' limits the universe of 'claims' to a subset of 'claims-against-the-debtor.'

One of the seven Rules of Construction for the Code, as set forth in section 102(2), expressly provides that "'claim against the debtor' includes claim against the property of the debtor." This use of the verb "includes" in this context means that 'claim against property of the debtor' constitutes a sub-set of 'claims against the debtor.' **In other words, if one holds a claim against property of the debtor, then one holds a claim against the debtor.**
…
[T]he retirement system has the express and unimpaired right as a matter of New York State law to offset the balance due from his plan account. By providing for the retirement system's right to exercise a setoff against the debtor's property interest under the plan, New York State law confers the status upon the retirement system of a holder of a secured claim against the debtor.
…
The trustee's first objection—that the pension loan is not a debt—misses the entire thrust of the teaching of United States Supreme Court in *Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150, 115 L.Ed.2d 66 (1991), that a debtor can incur an indebtedness in the form of a nonrecourse loan, and that a nonrecourse loan satisfies the definition of a 'claim' under section 102(2):
[I]nsofar as Congress did not expressly limit section 102(2) to nonrecourse loans but rather chose general language broad enough to encompass such obligations, we understand Congress' intent to be that section 102(2) extend to all interests having the relevant attributes of nonrecourse obligations regardless of how these interests come into existence.
501 U.S. at 86–87, 111 S. Ct. at 2155.

216 B.R. at 336-37, 340-41 (emphasis in original).

A second case, *In re MacDonald*, 222 B.R. 69 (Bankr. E.D. Pa. 1998), agreed: "We find considerable merit in the reasoning of *Buchferer*. A debtor's loans from a retirement plan certainly appear to us to constitute a 'debt' or 'claim.' Such claims do appear in some sense secured and thus entitled to different treatment than unsecured claims." 222 B.R. at 76.[6]

H.  BAPCPA Clarifies That Pension Plan Loans are Debts.

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). BAPCPA included provisions designed to overrule *In re Harshbarger*, 66 F.3d 775 (6th Cir. 1995), which held that proposed monthly payments to repay a pension plan loan cannot be deducted from a chapter 13 debtor's "projected disposable income." To that end, BAPCPA added § 1322(f), which provides that "[a] plan may not materially alter the terms of a loan described in section 362(b)(19) and any amounts required to repay such loan shall not constitute 'disposable income' under section 1325." BAPCPA also added § 362(b)(19), which provides that the automatic stay does not apply to withholding from the debtor's wages to repay prepetition pension plan loans. Finally, BAPCPA added a new § 523(a)(18), which excepts from discharge "any debt . . . owed to a pension, profit-sharing, stock bonus, or other plan established under section 401 . . . of the Internal Revenue Code is 1986, under . . . a loan permitted under section 408(b)(1) of the Employee Retirement Income Security Action of 1974 . . . ."

I.  Post-BAPCPA Treatment of Pension Plan Loans.

BAPCPA had its intended effect on chapter 13 practice: after BAPCPA, debtors may repay pension plan loans, and the monthly loan repayments are deductible from the "projected disposable income" calculation. *See, e.g., In re Seafort*, 669 F.3d 662, 665-66 (6th Cir. 2012) (BAPCPA

---

[6] *MacDonald* went on to distinguish its case on the facts, however. For additional support for the notion that a pension plan loan is a debt, *see* Bartell (defined and discussed in Section I, below) and Sherwin P. Simmons, *Pension Plan Loans and Bankruptcy: The Great Debate and a New View*, 18 Bankr. Dev. J. 373, 398 (2002).

changed the rule on whether payments on a pension plan loan were part of disposable income); *Gorman v. Cantu*, 713 Fed. App'x 200, 201 (4th Cir. 2017) (§ 1322(f) allows exclusion of pension plan loan payments from disposable income calculation).

Surprisingly, however, BAPCPA did not eradicate the view that pension plan loans are not debts. Applying the new "means test" in § 707(b)(2)(A), courts have declined to treat pension plan loans as secured debts that can be deducted when determining a debtor's "current monthly income." For example, in *In re Egebjerg*, 574 F.3d 1045 (9th Cir. 2009), the Ninth Circuit held:

> We join the vast majority of courts in holding that the debtor's obligation to repay a loan from his or her retirement account is not a "debt" under the Bankruptcy Code. *See*, *e.g.*, *In re Villarie*, 648 F.2d 810 (2d Cir. 1981) (loan drawn on employee's contributions to retirement system not a "debt" because plan has no right to sue a member for the amount of the advance, it is simply offset against future benefits)…. The reasoning behind these decisions is straightforward. Egebjerg's obligation is essentially a debt to himself—he has borrowed his own money. *In re Smith*, 388 B.R. 885, 887 (Bankr. C.D. Ill. 2008); *see also McVay* [*v. Otero*], 371 B.R. [190,] 197 [(W.D. Tex. 2007)] (collecting cases). Egebjerg contributed the money to the account in the first place; should he fail to repay himself, the administrator has no personal recourse against him. *In re Villarie*, 648 F.2d at 812. Instead, the plan will deem the outstanding loan balance to be a distribution of funds, thereby reducing the amount available to Egebjerg from his account in the future.

574 F.3d at 1049. The *Egebjerg* court continues:

> The retirement plan administrator does not loan the plan participant the administrator's money. It simply deducts the requested loan amount from the participant's own account, and credits the loan payments and interest back to the participant's account. If the participant defaults on the loan, the plan administrator deducts the amount owed from the vested account balance, and repays the loan with this deduction….[T]he plan administrator has no right to payment under the Bankruptcy Code.

574 F.3d at 1049–50, quoting *Eisen*, 370 B.R. at 768 n.10. *Egebjerg* concludes that "[t]his deemed distribution will have tax consequences to Egebjerg, but it does not create a debtor-creditor relationship." *Id.* at 1049; *see also Bolen v. Adams*, 403 B.R. 396, 402 (N.D. Miss. 2009); *Masur v. Fokkena*, 2009 WL 3150891, at *7-8 (D.S.D.); *McVay*, 371 B.R. at 195-203; *In re Alther*, 537

B.R. 262, 267–68 (Bankr. W.D. Va. 2015); *In re Wellington*, 2012 WL 441260, at *5 (Bankr. E.D. Mo.) ("this Court will join the majority of courts which have concluded that repayment of a 401(k) loan is not a debt which can be deducted in a Chapter 7 means test analysis"); *In re Harrison*, 2010 WL 398975, at *2 (Bankr. M.D.N.C.); *In re Smith*, 388 B.R. 885, 887-88 (Bankr. C.D. Ill. 2008); *In re Mowris*, 384 B.R. 235, 238 (Bankr. W.D. Mo. 2008); *In re Turner*, 376 B.R. 370, 375-76 (Bankr. D.N.H. 2007); *In re Herbert*, 2007 WL 6363172, at *6 (Bankr. D. Neb.); *In re Mordis*, 2007 WL 2962903, at *3-4 (Bankr. E.D. Mo.); *In re Lewis*, 2007 WL 2742854, at *3 (Bankr. N.D. Ohio); *In re Scarafiotti*, 375 B.R. 618, 635 n.75 (Bankr. D. Colo. 2007).

Professor Laura B. Bartell argues persuasively that courts should not import *Villarie's* (incorrect) holding into the chapter 7 "means test." *See* Laura B. Bartell, *Pension Plan Loans and Means Testing – The Pernicious Endurance of Villarie*, 87 Am. Bankr. L.J. 89, 89–90 (2013) ("Bartell"). Professor Bartell asserts that "*Villarie* was wrong when it was decided, was implicitly rejected by the Supreme Court in *Johnson v. Home State Bank*, and was overruled by the amendments made in BAPCAPA to §§ 362(b) and 523(a)." Bartell, p. 121 (citations omitted; italics added). Professor Bartell urges courts to recognize, at a minimum, that *Villarie* did not survive BAPCPA and that pension plan loans are nonrecourse secured claims under the Bankruptcy Code.

J.    <u>Plaintiff Stated a Claim That There was an Antecedent Debt When Mrs. Dubbin Made the Payment</u>.

The view that pension plan loans are not "claims" or "debts" is not supportable, especially post-BAPCPA. The Bankruptcy Code now says, in several places, that such loans are debts. *See* §§ 362(b)(19) and 523(a)(18). This Court will follow the reasoning of *Buchferer*, *MacDonald*, and Bartell, which is consistent with the treatment of pension plan loans in BAPCPA. Plaintiff's

complaint is sufficient to allege that Defendant had a claim against Debtor when the Payment was made, so the Payment was on account of an antecedent debt.[7] Plaintiff's § 547(b) claim states a cause of action.

K.     Plaintiff has Stated a Claim That There Was a Transfer.

Defendant also argues that "[t]he Ideals 401(k) has no property interest in the Ideals 401(k) fund. The property interest[s] belong to the 401(k) participants…The Defendant is not a separate entity with any property rights[.]" Because of this alleged lack of separateness, Defendant argues that no transfer occurred when Debtor made the Payment. And without a transfer, Defendant argues, Plaintiff fails to state a claim under either § 547 or § 548.

Like the "no debt" argument, Defendant's argument is supported by case law. As evidenced by *Egebjerg*, at some point courts began characterizing *Villarie* as holding that pension plan loans are not debts because the participant is merely "borrow[ing] from himself." *See, e.g., In re Carpenter*, 23 B.R. 318, 320 (Bankr. D.N.J. 1982); *Turner*, 376 B.R. at 375-76; *Devine*, 1998 WL 386380, at *9; *In re Scott*, 142 B.R. 126, 130 (Bankr. E.D. Va. 1992); *McVay v. Otero*, 371 B.R. 190, 196 (W.D. Tex. 2007); *Bolen*, 403 B.R. at 402.

This is a misreading of *Villarie*; the Second Circuit did not hold that the pension plan loan was not a debt because the debtor borrowed his own money. Rather, the court held that the loan was not a debt because the pension plan had no recourse against the debtor personally. 648 F.2d at 812. While *Villarie* mentioned two situations where debtors "borrow" their own money—life

---

[7] Even if the Tenth Circuit were to follow *Villarie* and *Egebjerg* and hold that pension plan loans are not debts under the Bankruptcy Code, there is no question that, prepetition, Debtor owed a debt to Defendant under nonbankruptcy law.

insurance advances and annuity advances, *id.*,[8] the deciding factor in *Villarie* was the plan's alleged inability to collect the loan from the debtor, not the source of the loan funds. *Id.*

In any event, pension plan borrowers do not "borrow their own money." While the *amount* of the loan may be capped by the size of the borrower's pension plan account, there is no link between the borrower's account and the borrowed funds. As professor Bartell observed:

> The debtor's contributions are not the source of a pension plan loan, any more than a debtor's deposits with a bank are the source of a bank loan even if the bank required a compensating balance in an amount equal to the loan.

Bartell at 103. Pension plan assets typically are pooled. *See* 29 C.F.R. § 2510.3-102 (definition of "plan assets"-participant contributions). Participants have an undivided beneficial ownership interest in the pooled assets, but the plan fiduciaries do not segregate the investment assets of each plan participant. The fact that pension plan assets are pooled is inconsistent with the idea that participants "borrow their own money."[9]

Even if the debtor could trace the borrowed funds back to her pension plan account, taking out a pension plan loan is a far cry from "borrowing your own money." Borrowing your own money means taking cash from your Christmas fund envelope to pay for an unanticipated car repair, while promising yourself that you will pay back the Christmas fund with your next paycheck. With a pension plan loan, in contrast, the participant must first give money to the pension plan fiduciary, who invests it subject to complex laws and regulations. The resulting investment is held by the plan trustee in a pooled trust fund. The participant has an account, with a balance equal to her contributions, any employer contributions, and investment gains or losses.

---

[8] These examples are not analogous to pension plan loans because the insured/annuitant has no repayment obligation—she can repay the advance or not, in her sole discretion. With pension plan loans, in contrast, there is a legal repayment obligation, with substantial penalties for nonpayment.
[9] A margin loan is another good example of a loan secured by the borrower's assets that cannot be described accurately as the borrower "borrowing from herself."

In the event of an unanticipated car repair (to use the same example), the participant must apply for a pension plan loan, qualify, sign a promissory note, agree to repayment and wage withholding terms, and pay interest. Only then will the participant/borrower be able to get the loan from the fiduciary and pay the repair bill.

The two situations are not similar. Courts should not be so quick to collapse the carefully constructed federal and state law framework for pension plans, including pension plan loans, into the facile, incorrect description of "borrowing her own money."

In addition, the Bankruptcy Code's definition of "transfer" is very broad:

§ 101(54) The term "transfer" means--
    (A) the creation of a lien;
    (B) the retention of title as a security interest;
    (C) the foreclosure of a debtor's equity of redemption; or
    (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
        (i) property; or
        (ii) an interest in property.

Courts have held that converting non-exempt property to exempt property is a "transfer" under this definition. *See, e.g., In re Smiley,* 864 F.2d 562, 565-66 (7th Cir. 1989); *In re Johnson*, 880 F.2d 78, 82 (8th Cir. 1989) (conversion of non-exempt assets to exempt assets can be a fraudulent transfer); *In re Davidson*, 178 B.R. 544, 550 (S.D. Fla. 1995) ("the Court rejects [a]ppellees' argument that the conversion of a non-exempt asset to an exempt [a]nnuity in this case did not constitute a "transfer" under § 727(a)(2)"); *In re Hoetmer*, 2012 WL 4482387, at *1 (Bankr. S.D. Ind. 2012); *In re Dunbar*, 313 B.R. 430, 436 (Bankr. C.D. Ill. 2004); *In re Levine*, 166 B.R. 967, 970 (Bankr. M.D. Fla. 1994) ("the liquidations of non-exempt assets were in fact 'transfers' within the meaning of the Code"); *see also In re Carey*, 938 F.2d 1073, 1077 (10th Cir. 1991) (to deny debtor's discharge under § 727 for converting non-exempt assets to exempt assets, creditor must prove actual fraud).

-13-
Case 21-01004-t    Doc 15    Filed 08/06/21    Entered 08/06/21 15:33:15 Page 13 of 14

Furthermore, nonbankruptcy law treats pension plan trustees as separate from their plan participants/borrowers. Usually the plan trustee is not the borrower. The plan trustee has fiduciary duties to all plan participants. She is subject to federal and state laws, rules, and regulations. She holds legal title to all plan assets. Nonbankruptcy law could not be clearer that the pension plan lender and the participant/borrower are not the same. There is no reason for a different result under the Bankruptcy Code.

The Court concludes that Plaintiff has stated a claim that the Payment was a transfer and that Defendant was the initial transferee.

## Conclusion

Pension plan loans are bona fide debts outside of bankruptcy and are recognized as such by the Bankruptcy Code. Similarly, payments on account of pension plan loans are transfers and the plan trustee is the initial transferee. At least, the Court reaches those conclusions for the limited purpose of ruling on the motion to dismiss. The motion will be denied by separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: August 6, 2021

Copies to: Counsel of record